**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEPHEN BERNARD BLACKSTONE, | ) Civil Action No. 2: 12-cv-1786 |
| | ) |
| Plaintiff, | ) |
| | ) United States District Court Judge |
| v. | ) Cathy Bissoon |
| | ) |
| CO WILDIE RICHTER, | ) United States Magistrate Judge |
| | ) Cynthia Reed Eddy |
| Defendant. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

Pending before the Court is a Motion for Summary Judgment (ECF No. 51) filed by

Defendant CO Wildie Richter ("Defendant" or "Richter"). For the reasons that follow, it is

respectfully recommended that the motion be granted.

**II. REPORT**

A. Relevant Background

Except as otherwise indicated, the following facts are undisputed.

Plaintiff Stephen Bernard Blackstone ("Plaintiff") is an inmate who all relevant times to

this action has been confined at the State Correctional Institution at Greene ("SCI-Greene").

Plaintiff originally asserted several claims under 42 U.S.C. § 1983 against multiple correctional

officers of SCI-Greene.[1] As a result of the Court's ruling on Defendants' motion to dismiss, the

---

[1] The Complaint named seven (7) defendants, all of whom were employees of SCI-Greene: CO
Wildie Richter, Lieutenant Alan Morris, CO Scott Feather, CO Christopher Colgan, Sergeant Leonard
Eutsey, Lieutenant Robert Kennedy, and Superintendent Louis Folino. In response to Defendants'
Motion to Dismiss, Plaintiff filed an Amended Complaint on April 15, 2013 (ECF No. 22), in which
Defendants Kennedy and Folino were dropped as named parties. Plaintiff asserted claims against the
remaining five defendants for retaliation, conspiracy, and denial of access to the courts. Defendants filed
a Motion to Dismiss the Amended Complaint, which was granted in part and denied in part. By

only remaining defendant in this case is Defendant Richter and the only remaining section 1983 claims are First Amendment violations for (1) retaliation and (2) denial of access to the courts.

On December 9, 2010, while housed in the Restricted Housing Unit ("RHU") of SCI-Greene, Plaintiff submitted a grievance complaining about the food being served on unsanitary trays. The grievance was not submitted against any particular officer in the RHU. Instead, it was generally lodged against all of the officers assigned to the RHU. Richter was a member of the group of officers stationed in the RHU at all relevant times to this action.

Richter contends that he always treated Plaintiff in a professional manner. Plaintiff disagrees and asserts that after he submitted the above grievance, Richter's demeanor changed. Prior to Plaintiff submitting this grievance, Plaintiff described his relationship with Richter as being "fair." (Pl.'s Dep. at 14, ECF No. 53). Specifically, Richter gave Plaintiff extra phone privileges, request slips, cash slips, and ink pens, and Richter would exchange unsanitary food trays for clean food trays when Plaintiff requested. (*Id.*).

Shortly after Plaintiff submitted this grievance, he witnessed Richter and the other officers having discussions in an office. Plaintiff asserts that the discussions pertained to Plaintiff and the other inmates filing grievances about unsanitary food trays, although Plaintiff could not actually hear the discussion. Plaintiff also asserts that on or around December 14, 2010, while Richter was passing out food trays to the inmates, Richter complained that he was tired of inmates filing grievances about unsanitary food trays. Plaintiff also heard Richter tell the other officers that Richter assumed that Plaintiff was the person persuading the other inmates to

Memorandum Order dated September 4, 2013, the Report and Recommendation was adopted which recommended that all claims against Defendants Morris, Feather, Colgan, and Eutsey be dismissed with prejudice, the conspiracy claim be dismissed, without objection, and the retaliation claim against Defendant Richter be allowed to proceed. Because Defendants had not challenged the denial of access to the courts claim, that claim was allowed to proceed, but only as to Defendant Richter. (ECF No. 29, adopting ECF No. 28).

file grievances relating to the unsanitary food trays. In addition to Plaintiff, Christopher Pisechko, an inmate who was also housed in the RHU during this time, allegedly heard these comments. (Pisechko's Decl., ECF No. 58-5).

On December 17, 2010, Plaintiff received food trays that were contaminated with ink. Plaintiff requested that Richter replace the contaminated food trays with clean trays, but Richter refused. Plaintiff also requested that Richter allow Plaintiff to use the phone, which Richter had routinely allowed in the past before Plaintiff filed the grievance, but Richter denied this request as well. The following day, Richter gave Plaintiff food trays which contained leftover food on them, and again denied Plaintiff's request to exchange the trays. On December 22, 2010, Plaintiff received the initial response denying his December 9, 2010, grievance about unsanitary food trays.

According to Plaintiff, on December 27, 2010, during the morning shift, Plaintiff gave Richter a large manila envelope containing legal paperwork to be copied by the librarian. According to Plaintiff, this manila envelope contained a total of 104 pages, consisting of 102 pages of legal documents associated with a PCRA petition and 2 pages associated with the appeal of a grievance. This envelope had a cash slip attached/taped to the outside of it authorizing the librarian to deduct $10.40 from Plaintiff's inmate account so that Plaintiff could have the documents contained therein photocopied. *See* (ECF No. 58-7). At the jail, the copy fee rate is $0.10 per page. Inside the envelope Plaintiff had included a separate Inmate's Request to Staff Member slip ("request slip") requesting that the librarian make a copy of each document in the envelope, for a total cost of $10.40.[2] *See* (ECF No. 58-11). Although Plaintiff submitted

---

[2] Richter disputes that there were 104 pages of legal material contained in this envelope. Richter instead asserts that the envelope only contained a total of 4 pages and that the cash slip only requested that $0.40 be deducted from Plaintiff's account.

this envelope to Richter on December 27, 2010, the attached cash slip and request slip were both dated December 24, 2010.

Plaintiff also gave Richter four additional envelopes. One of these envelopes was allowed to be mailed free of charge. The other three envelopes had cash slips attached to them. The large manila envelope which contained the legal documents is the subject of this suit

Under the prison's policies, mail that has an attached cash slip and request slip is taken to the RHU sergeant's office for processing. According to the summary judgment evidence, Richter took the envelopes from Plaintiff and then put them in the RHU sergeant's office. The cash slip was then stamped and signed, and the envelope was placed in a bag for mail collection.[3] When the law librarian received the manila envelope, the cash slip was no longer attached to it. The summary judgment is void of any evidence to suggest that Richter either personally delivered the envelope to the law librarian from the RHU sergeant's office or that he removed the cash slip from the envelope.

Plaintiff has offered a declaration from Jose M. Feliciano, an inmate who was working in the law library on December 27, 2010. (Feliciano Decl., ECF No. 58-17). Feliciano claims to have witnessed the law librarian, Ms. Sebek, sort through the inmate mail on this date. According to Feliciano, Ms. Sebek came across a cash slip in the amount of $10.40, which was signed by Plaintiff and the unit officer. The cash slip, however, was not attached to an envelope. Thus, the librarian wrote on the slip "no paperwork attached, copies of what?" and sent the cash slip back to Plaintiff via in-house mail.

Ms. Sebek continued sorting through the rest of the mail and came across Plaintiff's manila envelope containing the enclosed request slip. Feliciano asserts that there were numerous

---

[3]     There is a dispute as to whether the RHU sergeant signed the cash slip. Richter asserts that Sergeant Eutsey signed the cash slip. Plaintiff claims that Richter forged Eutsey's signature.

legal documents enclosed for copying. Ms. Sebek could not copy these documents, however, because there was no cash slip attached to the outside of the envelope. As discussed above, the attached cash slip had become separated from the envelope and Ms. Sebek had already returned the cash slip to Plaintiff. Thus, Ms. Sebek wrote on Plaintiff's request slip "Ret/No cash slip" and returned it to Plaintiff via in-house mail. There is no summary judgment evidence to suggest that Richter was involved in delivering the manila envelope from the law library back to Plaintiff through the jail's internal mail system.

On December 28, 2010, during the afternoon shift, a different officer delivered to Plaintiff the cash slip that was returned by Ms. Sebek. Because it was no longer attached to the manila envelope, Plaintiff asked this officer where the envelope was, but this officer did not know and informed Plaintiff that he was just handing out the mail.

On December 29, 2010, Plaintiff spoke with Richter and inquired as to where the manila envelope containing the legal documents was. At Richter's request, Plaintiff handed Richter the returned cash slip. Richter walked away with the cash slip and went to the Unit Office to look for the manila envelope. Richter found the envelope in the G Unit's distribution box and brought it back to Plaintiff's cell. Richter gave Plaintiff the envelope and had Plaintiff open it in Richter's presence. The envelope did not contain 104 pages of material. Rather, it only contained a total of 4 pages, including 2 pages regarding the grievance appeal, 1 request slip, and 1 law library receipt. The law library receipt indicated that 0 copies were made.

Plaintiff told Richter that the envelope was missing 102 pages of legal documents.[4] Richter then left to call Ms. Sebek. Richter returned and told Plaintiff that Ms. Sebek stated that

---

[4] Richter claims that during this conversation, he told Plaintiff that the cash slip only states an amount of $0.40; that 104 pages would not fit inside the envelope, which he demonstrated to Plaintiff by placing 104 blank pages inside the manila envelope to demonstrate that they would not fit; and that Plaintiff became argumentative. However, Plaintiff claims that the face of the cash slip shows it was for

there were no documents inside the envelope to copy. Plaintiff disputes that Ms. Sebek actually said this to Richter. Almost two years after this incident occurred, Plaintiff asked Ms. Sebek whether she remembered Richter calling her on December 29, 2010 concerning the envelope containing the legal documents. Ms. Sebek allegedly told Plaintiff that she remembered the conversation with Richter from that day. (Pl.'s Decl. ¶ 18, ECF No. 58-3). Additionally, Ms. Sebek denied that she ever told Richter that the envelope did not contain any legal documents, as Richter had asserted. She explained to Plaintiff that if there were not any documents in the envelope to copy, she would have specified that in her written comment on the request slip. (*Id.* at ¶ 20).

Plaintiff wanted the legal documents copied so that he could attach them to his Post Conviction Relief Act ("PCRA") petition, which he was preparing pro se. A review of the state court docket reflects that Plaintiff submitted his PCRA petition and supporting brief on March 28, 2011. The PCRA court dismissed the petition on August 4, 2011. On August 7, 2012, the Superior Court vacated the PCRA court's dismissal and remanded the matter. Counsel was appointed for Plaintiff and a Supplemental / Amended Petition was filed on Plaintiff's behalf by counsel. On April 23, 2013, Plaintiff's request for waiver of counsel and to proceed pro se was granted. The docket reflects that as of the time of the filing of this Report and Recommendation, Plaintiff's PCRA case remains pending.[5] See Docket No. CP-22-CR-0003472-2001.

---

$10.40, and he has submitted declarations from inmate Feliciano and Albert Dantzler which both support his position that the envelope contained more than just 4 pages and that the cash slip reflects an amount of $10.40. *See* (ECF Nos. 58-17, 58-18).

[5] The docket of Plaintiff's PCRA proceeding is publically available on the website of the Pennsylvania courts at https://ujsportal.pacourts.us. Thus, the Court may take judicial notice of the docket. *See* Fed.R.Evid. 201(c); *Johnson v. Pennsylvania*, 2013 WL 2285280 (M.D.Pa. 2013).

B.    Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).

A party claiming that a fact cannot be or is genuinely disputed must support that assertion either by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or   presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Moreover, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for

trial. *Williams v. Bor. of West Chester*, 891 F.2d 458, 460–461 (3d Cir. 1989) (non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).

The non-moving party cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument, but must "put up or shut up." *Berckeley Inv. Group., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (quoting *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109-10 (3d Cir. 1985)). Plaintiff must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322; *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting *Anderson*, 477 U.S. at 251-52). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth.*

*of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner,* 121 F.3d 895, 900 (3d Cir. 1997)).

Because Plaintiff is proceeding pro se, the Court is required to liberally construe his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nonetheless, this does not require the Court to credit his "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997). Thus, for example, mere allegations, without support, are insufficient. Rather, the allegations must be supported by evidence, which the Court will evaluate under the standard described above to determine if there is merit beyond mere conclusions.

C.    Discussion

Richter asserts that he is entitled to summary judgment because Plaintiff has not established that Richter was personally involved in destroying Plaintiff's legal materials. "To establish a section 1983 civil rights claim, a plaintiff must demonstrate that the conduct complained of was committed by a person acting under state law and that the conduct deprived him of rights, privileges or immunities secured by the Constitution." *Piecknick v. Com. of Pa.*, 36 F.3d 1250, 1255-56 (3d Cir. 1994) (quoting *Carter v. City of Philadelphia*, 989 F.2d 117, 119 (3d Cir.1993)). The plaintiff must establish that each named defendant was personally involved in the events or occurrences which underlie a claim. *See Rizzo v. Goode,* 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976). Claims brought under section 1983 cannot be premised on a theory of respondeat superior. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). As explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or

actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207.

Plaintiff contends that there are genuine issues of material fact as to whether Richter destroyed Plaintiff's legal documents. Plaintiff claims that after he filed the grievance regarding unsanitary food trays on December 9, 2010, Richter's demeanor changed. Specifically, Plaintiff claims that on or around December 14, 2010, Plaintiff and inmate Pisechko overheard Richter complain about inmates filing grievances about unsanitary food trays and that Richter stated that he believed that Plaintiff was persuading other inmates to file such grievances. Additionally, on December 17, 2010 and December 18, 2010, Richter denied Plaintiff's requests to exchange unsanitary food trays for clean food trays and denied Plaintiff's request to use the phone, which Richter had routinely allowed in the past before Plaintiff filed the grievance. Plaintiff also claims that Richter forged the RHU sergeant's signature on the cash slip on December 27, 2010, after Richter collected Plaintiff's mail. Plaintiff asserts that the temporal proximity of these ongoing events after he filed the grievance suggests that Richter is responsible for the loss of his legal documents which allegedly occurred on December 27, 2010.

Plaintiff also points to the dispute between the parties as to how many documents were inside the manila envelope in arguing that summary judgment is inappropriate. Plaintiff claims that the cash slip reflects an amount of $10.40 and that 104 pages were inside the manila envelope, while Richter claims that the cash slip only reflects an amount of $0.40 and that only 4 pages were inside the manila envelope.. Plaintiff's declaration discusses a conversation that he allegedly had with the librarian, Ms. Sebek, almost two years after his documents went missing, which contradicts Richter's position. (ECF No. 58-3). Ms. Sebek allegedly told Plaintiff that contrary to what Richter had asserted, she never told Richter during a phone conversation on

December 29, 2010 that there were no documents to copy inside the manila envelope.[6] (*Id.* at ¶¶ 17-22). Plaintiff has also offered declarations from inmates Dantzler and Feliciano, who both claim that they saw the manila envelope and that it contained "numerous" documents.[7] (ECF Nos. 58-17, 58-18). According to inmate Feliciano, when the manila envelope was in the law library and was being handled by Ms. Sebek, it still contained numerous legal documents. (ECF No. 58-17 ¶ 5).

The Court finds that the evidence of record, when viewed in a light most favorable to Plaintiff, is insufficient to support Plaintiff's allegations that Richter was personally involved in the loss/destruction of Plaintiff's legal documents. Indeed, under Plaintiff's version of the events, after Plaintiff handed Richter the manila envelope and after Richter allegedly forged the cash slip on December 27, 2010,[8] the manila envelope was nonetheless delivered to the law library where, according to Ms. Sebek and inmate Feliciano, the documents were still contained

---

[6]     In his reply brief, Richter seeks to have the Court disregard this conversation, claiming that it constitutes inadmissible hearsay. However, because Plaintiff indicated in his deposition that if this matter proceeds to trial, he intends to call Ms. Sebek as a witness, (Pl.'s Dep. at 54, ECF No. 53), the Court need not disregard this evidence submitted by Plaintiff, as Ms. Sebek would be able to testify to this conversation if called as a witness. *See Shelton v. Univ. of Med. & Dentistry*, 223 F.3d 220, 223 n. 2 (3d Cir. 2000) ("In this circuit, hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial.") (citing *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1275 n. 17 (3d Cir. 1995)); Fed. R. Evid. 801(2) (statements by an opposing party are not hearsay).

[7]     Richter asserts in his reply brief that the Court should consider the inmate declarations in light of the fact that the inmates are convicted felons and that their credibility should be questioned in accordance with Federal Rule of Evidence 609(a)(1). However, as discussed in the section above setting forth the appropriate standard of review, the Court is not permitted to make credibility determinations. *Anderson*, 477 U.S. at 255.

[8]     The Court notes that the record is void of any evidence to support Plaintiff's allegation that Richter forged the RHU sergeant's signature. Plaintiff admitted in his deposition that he had never seen Richter's signature and admitted that the officer that usually fills in the disputed portion of the cash slip is usually "the officer that you give the cash slip to," which was Richter in this case. (Pl.'s Dep. at 49, ECF No. 53). Plaintiff's belief that Richter forged this document amounts to nothing more than speculation.

inside of it.[9] There is no evidence of record to suggest that when Ms. Sebek returned the manila envelope to Plaintiff through the jail's internal mail system that Richter was involved or had any contact with the delivery of the envelope to the Unit's distribution box from the law library. There is also no evidence of record to suggest that after Richter located the manila envelope in the distribution box on December 29, 2010, that Richter destroyed or lost any materials.

Plaintiff's belief that Richter destroyed his legal documents is merely conjecture, and is unsupported by any evidence of record. Accordingly, the Court recommends that Richter's motion for summary judgment be granted on both the retaliation claim and the denial of access to the courts claim.[10] *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (a plaintiff in a civil rights action must prove personal involvement in the alleged wrongdoing); *Mincy v. Chmielsewski*, 508 F. App'x 99, 104-105 (3d Cir. 2013) (holding that the pro se inmate/plaintiff's unsupported allegations that prison staff stole his property are insufficient to establish personal involvement at the summary judgment stage and affirming the district court's grant of summary judgment of the retaliation claim); *Atwell v. Lavan*, 557 F.Supp.2d 532, 554 (M.D. Pa. 2008) (dismissing the pro se inmate/plaintiff's denial of access to the court's claims against the defendants that he failed to show were personally involved in the underlying conduct).

---

[9]     Therefore, even assuming *arguendo* that Richter signed the RHU sergeant's signature, Plaintiff has failed to articulate a basis to support a conclusion that this demonstrates that Richter destroyed the legal documents, given that the declarations submitted by Plaintiff provide that legal documents were still inside of the envelope after the alleged forgery occurred.

[10]     Plaintiff's denial of access to the courts claim also fails because he has failed to establish that he suffered an actual injury from the loss of his legal materials. *See Lewis v. Casey*, 518 U.S. 343, 352–53 (1996); *Oliver v. Fauver*, 118 F.3d 175, 178 (3d Cir. 1997) (an inmate must establish actual injury, such as the loss or rejection of a legal claim). Despite the loss of these documents, Plaintiff has not shown that he has been prevented from pursuing his claims in his PCRA proceeding, that he has missed any deadlines associated with his petition, and given that his PCRA proceeding remains pending, he has not shown that he lost a "nonfrivolous" or "arguable" claim. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

D.    Conclusion

Based on the foregoing, it is respectfully recommended that Defendant Richter's motion for summary judgment (ECF No. 51) be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B), Rule 72(b)(2) of the Federal Rules of Civil Procedure, and the Local Rules for Magistrates, the parties may file written objections to this report and recommendation within fourteen (14) days after being served with a copy of the report and recommendation. Failure to file timely objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).


Dated: May 28, 2015                                            By the Court,

                                                               s/ Cynthia Reed Eddy
                                                               Cynthia Reed Eddy
                                                               United States Magistrate Judge




cc:    Counsel of Record via CM-ECF

       STEPHEN BERNARD BLACKSTONE
       GE-5445
       S.C.I. Greene
       175 Progress Drive
       Waynesburg, PA 15370
       (via U.S. First Class Mail)